UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THOMAS ROBERTS, o/b/o C.J.R., a minor,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

                                 /

Case No. 12-cv-15303

HONORABLE STEPHEN J. MURPHY, III

**ORDER OVERRULING OBJECTIONS,
ADOPTING REPORT AND RECOMMENDATION**
(document no. 16), **DENYING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT** (document no. 11), **AND GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** (document no. 13)

The Social Security Administration ("SSA") denied C.J.R.'s[1] application for child's insurance benefits ("CIB") in a decision issued by Administrative Law Judge ("ALJ") Phillip C. Lyman on April 12, 2011. After the SSA Appeals Council declined to review the decision, C.J.R. appealed to this Court. The Court referred the matter to a United States Magistrate Judge, and the parties filed cross motions for summary judgment. On October 24, 2013, the magistrate judge issued a Report and Recommendation ("Report"), suggesting denial of C.J.R's motion and granting the Commissioner of Social Security's ("Commissioner") motion. Report, ECF No. 16. C.J.R. filed one timely objection, which is that the ALJ's assessment and hypothetical question did not adequately address limitations imposed by C.J.R.'s mental impairments or daily headaches.

Civil Rule 72 does not require the Court to hold a hearing when reviewing a magistrate judge's findings. Fed. R. Civ. P. 72; *U.S. v. Raddatz*, 447 U.S. 667, 674 (1980) (holding 28

---

[1] C.J.R's father Thomas Roberts is the plaintiff in this matter.

U.S.C. § 636 did not require a hearing for de novo review of a magistrate's findings); *see also Estate of Wyatt v. WAMU/JP Morgan Chase Bank*, 09-14919, 2012 WL 1622897 (E.D. Mich. 2012). After examining the record and considering C.J.R's objection de novo, the Court concludes that her objection does not have merit. Accordingly, the Court will adopt the Report, grant the Commissioner's motion for summary judgment, deny C.J.R.'s motion for summary judgment, and dismiss the case.

## BACKGROUND

C.J.R. was 18 years old at the alleged onset date of her disabilities. Administrative Record ("A.R.") at 93. She lived with her father who was a farmer. A.R. at 43. She contended that she had a brain disorder, brain tumor, and constant migraine headaches that led her to have trouble focusing and to need to be reminded to do things. A.R. at 84. The Social Security Administration denied benefits and C.J.R. filed a timely request for a hearing. On March 8, 2011, C.J.R. appeared with counsel at a hearing held before ALJ Lyman. A.R. at 29. Vocational Expert Thomas Linvill and Medical Expert Martin Macklin also appeared and testified. *Id.* On April 12, 2011, the ALJ issued his final report denying C.J.R.'s application for benefits. A.R. at 12-25. Overall, ALJ Lyman found that C.J.R. was not disabled. He determined that C.J.R. had a residual functional capacity to perform light work with certain limitations and modifications.

C.J.R. made an application to provide for the payment of a disabled child's insurance benefits payable when the claimant is 18 years old or older and has a disability that began before attaining age 22. 20 C.F.R. § 404.350(a)(5). When applying for disability benefits, a claimant has the burden to establish an entitlement to benefits. *Wyatt v. Sec'y of Health & Human Servs.,* 974 F.2d 680, 683 (6th Cir. 1992). Because C.J.R. was 18 when she

applied, the disability rules used for adults who file new claims applied to her. 20 C.F.R. § 416.924(f). In reviewing an application, an ALJ must examine the evidence using the five-step evaluation process specified by 42 U.S.C. § 423 and 20 C.F.R. § 404.1520. The "claimant bears the burden of proof during the first four steps, but the burden shifts to the Commissioner at step five." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004). If the claimant can establish an entitlement to benefits at any step, the inquiry ends and the claimant is entitled to benefits.

First, the ALJ must determine whether the claimant is engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(b). Here, the ALJ found that C.J.R. had not engaged in substantial gainful activity since October 7, 2008, the alleged onset date. A.R. at 14.

Second, the ALJ must determine whether the claimant suffers a "severe impairment" that "significantly limits [his] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). Here, the ALJ found that C.J.R. suffered from the severe impairment of depression involving chronic daily headaches and myalgias. A.R. at 14. C.J.R. does not dispute this finding.

Third, the ALJ must determine whether the claimant can prove the impairment "meets or equals" an impairment category found in the Social Security listing at 20 C.F.R. Pt. 404, Subpt. P, Appx. 1. If a claimant meets one of these categories, the claimant is considered disabled regardless of age, education, or work experience considerations. 20 C.F.R. § 404.1520(d). Here, the ALJ found that C.J.R.'s impairments, whether individually or combined, did not meet or medically equal on of the listed impairments. The ALJ noted that the medical expert testified that C.J.R.'s depression establishes the "A" criteria, but not the "B" criteria because there was no indication that she could not do activities or was so

limited by pain that the severity of the criteria were met. A.R. at 18-19. The ALJ found this testimony to be compelling and found that it was supported by the overall record. *Id.* at 19. C.J.R. does not challenge this finding.

Fourth, if, as here, the claimant cannot meet or equal one of the listed entries, the ALJ will make a determination of the claimant's "residual functional capacity" to engage in work, and the claimant must show she cannot engage in work she has performed in the past. In making this determination, the ALJ will consider all the relevant evidence. The ALJ must first conclude there is an underlying medical impairment capable of producing the claimant's symptoms, and then make a judgment as to the intensity, and limiting effects of the symptoms on the claimant's ability to work. The ALJ uses this judgment to determine a claimant's residual functional capacity. 20 C.F.R. § 404.1520(e). The findings made at this step are the ones that C.J.R. now challenges.

The ALJ concluded that C.J.R. had the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b). A.R. at 21. He also determined that she had the following restrictions and modifications: she was able to lift and carry 20 pounds occasionally and 10 pounds frequently; she was able to stand and walk up to six hours a day; she was able to sit six hours per day; she was able to occasionally climb stairs and ramps but never ladders, scaffolds, or ropes; she was able to occasionally balance; she was able to stoop, crouch, kneel, and crawl; she was able to frequently perform bilaterally reaching, handling, and fingering activities; she could not be subjected to heights and machinery; and she was limited slightly in responding to appropriately to work pressures and changes in the workplace. *Id.*

The ALJ found that the psychiatric and neurological record, including that of treatment

C.J.R. received at the Mayo Clinic in 2009, showed that C.J.R.'s depression constituted a single episode mainly involving trauma from her mother's death in 2004, which manifested in chronic daily headaches. *Id.* The ALJ found that C.J.R.'s mental status examinations were normal, indicating the absence of significant objective findings of uncontrolled symptoms, and she responded to treatment to the extent that she completed high school. *Id.* The ALJ relied on a mental residual functional capacity assessment made by Dr. Zahra Yousef in August 2009 to conclude that she had moderate symptomatology from depression which affected some but not all aspects of her mental work activities. *Id.*

The ALJ pointed to records from a July 2009 admission to the Head Pain Unit at Chelsea Community Hospital, which showed that C.J.R.'s level of anxiety and depressed mood related to pain was mild to moderate at that time. *Id.* He noted that the evaluators there believed that her head pain symptoms improved with treatment and reported that she was actively attending classes and socializing with others on the unit. *Id.* The ALJ found that improvement in C.J.R.'s pain was possibly related to periods when she was not living at home, which suggested a situational cause of her depression and pain rather than a physical one. *Id.* The ALJ found that the conclusion that C.J.R.'s pain "waxes and wanes" was consistent with her father's report that her activity was based on how good her days were in relation to the pain. *Id.*

The ALJ found that C.J.R.'s pain could be managed, noting that the treating physicians at the Head Pain Unit felt that C.J.R. should resume all activities including physical farming tasks, that she was not experiencing negative effects from medications, and she should engage in pain management techniques, such as relaxation, exercise, diet, sleep regulation, and stress management. *Id.* at 21-22. He also pointed out that the Mayo

Clinic neurologist recommended that C.J.R.'s headaches be controlled with either over the counter or prescribed anti-steroidal medications. *Id.* at 22.

The ALJ explained that his determination of residual functional capacity took into consideration that mild to moderate pain existed even though there were no physical and psychiatric objective finding on that point and provided some consideration of incidences of pain from depression. *Id.* Therefore, the ALJ reduced the exertional limitation to a light exertional workload and also limited postural activities because C.J.R. had not been physically active for many years. *Id.* He further explained that, although the record did not reflect ongoing difficulties with the effects of medications used for pain or depression, the residual functional capacity provided for some limitation pertaining to mental work activities based on the future possibility of side effects from medications associated with the control of pain and depression. *Id.*

C.J.R. had testified that she could not work because of constant pain in her neck and head, involving every muscle in her body, and because of fatigue. *Id.* She stated that she had a poor memory, ringing in her ears kept her up at night, she forgot things very easily, got pain from thinking, and her head pain never went below a six in severity. *Id.* In addition, she averred that she was forced to lay down or use ice or heat every day or two to ease the pain, that bright lights, standing, and moving made her head pain worse, that nerve blocks made the pain worse, and that exercise caused more pain. *Id.*

The ALJ determined that the record did not support these allegations. *Id.* at 23. He again noted that the record showed that C.J.R.'s pain was not constant, that medication and other treatment options could manage it, and that physical findings were normal or otherwise unremarkable. *Id.* The ALJ found that this conclusion was supported by C.J.R.'s

testimony that, on a daily basis, she spoke with friends, spent time with her boyfriend, and used a computer. *Id.* In addition, the ALJ noted that the record did not show that C.J.R. fully instituted the measures recommended to her by physicians in 2009 and 2010. *Id.*

The ALJ principally relied on the opinions of the medical expert and the agency consultant's mental residual function capacity assessment and found that it was mostly consistent with the medical source statement of C.J.R.'s treating physician, Dr. Shaikth. *Id.* The ALJ did not fully adopt Dr. Shaikth's assessment because it was incomplete, vague, lacked foundation, and was inconsistent with the overall record. *Id.* at 23-24.

Fifth, the ALJ must determine, based on the residual functional capacity and the claimant's age, work experience, and education, whether the claimant can engage in other work that is available in the national economy. 20 C.F.R. § 404.1520(f). Considering C.J.R.'s age, education, work experience, and residual functional capacity along with the testimony of the vocational expert, the ALJ found that C.J.R was qualified to work as a house cleaner or cashier, titles for which collectively thousands of jobs existed in the State of Michigan. A.R. at 23-24.

The Report recommended denying C.J.R.'s motion for summary judgment and granting summary judgment to the Commissioner, finding that the ALJ's decision was supported by substantial evidence. Report at 1. Pursuant to 28 U.S.C. § 636(b)(1), on October 24, 2013, Baker filed an objection to the report. The Commissioner did not file a response.

## STANDARD OF REVIEW

Reports and recommendations for dispositive motions issued by a magistrate judge are reviewed pursuant to Civil Rule 72(b). The district judge referring the motion is only

required to perform a de novo review of the magistrate judge's findings if the parties "serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). Here, Baker objected to one finding made by the magistrate judge as to the ALJ's decision. This finding will be reviewed de novo by the Court.

Judicial review of decisions by the Commissioner is authorized by 42 U.S.C. § 405(g). A reviewing court only examines an ALJ's determination to see if it is "supported by substantial evidence and was made pursuant to proper legal standards." *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y Health & Human Servs.,* 25 F.3d 284, 286 (6th Cir. 1994). Therefore, a review of the Commissioner's decision gives great deference to an ALJ's findings. A court should not replace an ALJ's judgment of the facts with its own view of the evidence unless an ALJ's finding is completely without support. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679 (6th Cir. 1989) ("We do not review the evidence de novo, make credibility determinations nor weigh the evidence."). If an ALJ's decision is supported by substantial evidence, the Court must accept the finding, even if substantial evidence would support a different finding as well. *Bass v. McMahon,* 499 F.3d 506, 509 (6th Cir. 2007).

## DISCUSSION

C.J.R. argues that the residual functional capacity assessment and hypothetical question to the vocational expert did not adequately address the limitations imposed by her mental impairments or headaches. Objections 2-5, ECF No. 17. She argues that the residual functional capacity failed to recognize that she might not be capable of sustained

focus and concentration. *Id.* at 2-3. C.J.R. also contends that the magistrate judge rewrote rather than reviewed the ALJ's opinion on this issue. *Id.* at 3. She argues that the evidence indicates "only the most minimal of abilities and the need for significant treatment before [C.J.R.] could do much of anything." *Id.* at 3.

Residual functional capacity is "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. Pt. 404, Subpt. P, App 2 § 200.00(c). C.J.R.'s objection goes to the heart of substantial evidence review. *See Adams v. Comm'r of Soc. Sec.*, No. 10-10022, 2011 WL 63495, at *2 (E.D. Mich. Jan. 6, 2011) ("While dressed as a 'legal' argument- ie, the failure to specify an inability to concentrate for prolonged periods must be mentioned in the hypothetical in order to the VE's determination to be valid- [claimant's] objection is really directed at the ALJ's conclusions of fact in regard to [his] condition."). As discussed above, if the ALJ's decision is supported by substantial evidence, the Court must accept the finding, even if substantial evidence would support a different finding as well. *Bass*, 499 F.3d at 509. C.J.R. is simply advocating for a different reading of the evidence, merely pointing to some evidence in the record that would not be inconsistent with a finding of disability.

Notably, the ALJ stated that C.J.R. had headaches that might interfere with her activities from time to time. A.R. at 19. This finding is reflected in the limitation to responding appropriately to work pressures and change in the workplace. *Id.* at 21. The Court finds it significant that the ALJ explicitly took into consideration the existence of C.J.R.'s pain, even though it was not confirmed by physical and psychiatric objective findings, as well as the possibility that she could have side effects from depression and pain

medications. *Id.* at 22. C.J.R. fails to show any reversible error in the ALJ's evaluation of her focus and concentration limitations. It is clear, therefore, that the ALJ's determination that C.J.R. was not disabled was based on substantial evidence and was demonstrated by the lengthy analysis of the extensive medical record at bar.

Furthermore, C.J.R.'s contention that the magistrate judge conducted an improper review of the ALJ's findings is unavailing. This Court has reviewed the magistrate judge's findings de novo and concludes that the magistrate judge correctly performed his task of substantial evidence review by showing how the ALJ's conclusions were supported by the administrative record. Again, C.J.R. has failed to demonstrate how the magistrate judge's analysis constituted reversible error.

Generally, the limitations found by an ALJ should be reflected in the hypothetical posed to the vocational expert. *Bohn-Morton v. Comm'r of Soc. Sec.*, 389 F. Supp. 2d 804, 807 (E.D. Mich. 2005) ("[A]n ALJ's hypothetical questioning must 'accurately set[] forth the plaintiff's physical and mental impairments.'") (quoting *Smith v. Halter*, 307 F.3d 377, 378 (6th Cir. 2001)); *Varley v. Sec. of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). An ALJ's hypothetical question "need only include the alleged limitations of the claimant that the administrative law judge accepts as credible and that are supported by the evidence." *Delgado v. Comm'r of Soc. Sec.*, 30 Fed. App'x 542, 548 (6th Cir. 1993). "An improper hypothetical question cannot serve as substantial evidence under § 405(g), and can result in a remand or reversal." *Edwards v. Barnhart*, 383 F. Supp. 2d 920, 931 (E.D. Mich. 2005). Although C.J.R. states that the hypothetical question posed herein did not adequately address the limitations imposed by her mental impairments or headaches, she makes no arguments on this point that are distinct from her contentions that the residual

functional capacity determination was flawed. Accordingly, the Court finds that substantial evidence supported the ALJ's determination of residual functional capacity and the hypothetical question included those limitations supported by the record.

## CONCLUSION

Substantial evidence supports the ALJ's conclusions with respect to C.J.R.'s residual functional capacity and the hypothetical question to the vocational expert. No legal rule requires finding otherwise. The Court will not overturn the ALJ's findings, and, therefore, will deny Baker's motion for summary judgment, and grant the Commissioner's motion for summary judgment.

## ORDER

**WHEREFORE**, it is hereby **ORDERED** that the Magistrate Judge's Report (document no. 16) is **ADOPTED** over C.J.R's objections.

**IT IS FURTHER ORDERED** that C.J.R.'s motion for summary judgment (document no. 11) is **DENIED**.

**IT IS FURTHER ORDERED** that the Commissioner's motion for summary judgment (document no. 13) is **GRANTED**.

**IT IS FURTHER ORDERED** that the complaint (document no.1) is **DISMISSED WITH PREJUDICE**.

**SO ORDERED**.

s/Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: December 17, 2013

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on December 17, 2013, by electronic and/or ordinary mail.

                                      s/Carol Cohron
                                      Case Manager